B. Davis *v.* Barham, Sheriff, et als.

In this case the judgment creditor sued the Sheriff for misfeasance in office, in counselling the judgment debtor to remove his property to avoid a seizure. The debtor was called to testify on behalf of the Sheriff, and on his *voire dire* stated : "I believe I have an interest in this case. I feel just this way ; I never did owe *Davis* (the plaintiff) the debt, and he never can collect it of me. If Col. *Barham* (the Sheriff) has it to pay, I shall feel in honor bound to. help him. I should only feel legally bound to pay Col. *Barham* the debt and interest in case of *Davis* v. *Myself*." *Held :* that the witness was incompetent.

APPEAL from the District Court of Morehouse, *Richardson*, J.

*Parsons*, for plaintiff and appellant. *McGuire & Ray* and *Hunter*, for defendants.

Spofford, J. The present action has been brought against *Thomas N. Barham*, Sheriff of the parish of Morehouse, and the sureties on his official bond for his alleged neglect and malfeasance in office ; he is charged with having neglected to execute a writ of *fieri facias*, issued under a judgment of the present plaintiff against *Dixon Hall*, and placed in his hands with proper instructions, when there was ample property, subject to seizure, to pay the execution, and with having, in violation of his official duty, advised and aided the defendant in execution, to remove the said property beyond the jurisdiction of the Court, which he did, thus defeating the plaintiff in an attempt to make his money.

The only defence really set up, under the plea of the general issue, is that the property which has been removed, was not liable to seizure under a judgment against *Dixon Hall*, but belonged in good faith, and under just title, to *Hall's* wife and children.

No exception was taken to the petition on account of the generality of its allegations. But, on the trial, a bill of exceptions was tendered to the ruling of the District Judge, who permitted the plaintiff to prove by *W. T. Hall*, son of *Dixon Hall*, what property was in possession of the latter, in the parish at the time the execution issued, and was removed to Arkansas by his father, defendant in execution, under the advise of *Barham*, Sheriff. The objection was that the property was not distinctly specified in the petition. The petition necessarily implies that it was all movable in its nature, and by reasonable inference, that some of it consisted of slaves. Their names and number are not particularized. The only object of requiring a more specific designation of the property would be to prevent the Sheriff from being surprised in his defence ; and as there is ample evidence before us that he was not surprised, we see no occasion to disturb the ruling of the District Judge. This very witness, amongst other things testifies as follows : "the morning after the execution issued in this case I had some conversation with Col. *Barham ;* he told me that he had told my father to have the negroes out of the parish by eleven o'clock the night before, as he was bound to be there at that time to make a seizure ; he also exhibited to me at that time a list in the handwriting of Mr. *Parsons*," (the counsel for plaintiff in execution) "directing what negroes were to be seized."

There is no pretence that the slaves named by this witness as having been removed from the State, under the Sheriff 's advice, to elude a seizure he said he was bound to make, were not upon the list furnished to the defendant, and he could not, therefore, have been surprised by the evidence.

The other bills of exceptions taken by the defendant's counsel have not been insisted on in argument, and we shall find it proper, under our view of the facts, to discuss but one of those presented by the plaintiff.

The case of *Elizabeth Hall* v. *Hill, McLean & Co.*, reported in 6th An. 745, furnishes the key to this controversy. In that suit the identical title now interposed by the Sheriff as a bar to this action, and which had been recognized by the District Court as valid, on appeal, was finally decreed by our predecessors to be a simulation and to confer no right of property upon Mrs. *Hall,* the plaintiff in injunction. *Thomas N. Barham,* was one of the sureties on her injunction bond in that case, and, as such was by law a party thereto, and was actually decreed to pay $100 damages as a penalty for his imprudence.

It is very material to notice that this decree of the Supreme Court was rendered at Monroe, at the October term 1851; that the present plaintiff's attorney had intelligence of this result on the 20th October, and, on that day, procured his writ of execution from the Clerk's office in Bastrop; that, on the 21st, he had an interview with the Sheriff, *Barham,* and informed him of what he intended to do, and at the same time told him that the suit of *Elizabeth Hall* and *Husband* v. *Hill, McLean & Co.* had been decided against her : on the evening of the same day (the 21st) he placed the execution in the hands of the deputy Sheriff with a written memorandum of the property to be seized and the property not to be seized, and directed him to make a levy at once.

It is further to be noticed that the Sheriff interposed no objection to making a seizure according to the instructions of the plaintiff's attorneys, and did not ask a bond of indemnity, although they desired to know if he would require one.

The evidence of Mr. *W. T. Hall* shows that most of the slaves named in the deed of reconveyance from *A. G. Hall* to *D. Hall, Sr.,* (to be noticed hereafter) were in the parish at the time the execution issued; that some of them were removed from the parish after the execution issued, ten of whom he mentions whose aggregate value he estimates at $6,500, which is more than the plaintiff's judgment amounted to ; that they were removed in consequence of, and about the time, the execution of *Davis* v. *Hall* was issued ; that they were removed to Arkansas and there sold. Then follows the remarkable statement already quoted, that the morning after the execution issued, Col. *Barham* told him that he had told his father, to have the negroes out of the parish by eleven o'clock the night before, as he was bound to be there at that time to make a seizure ; and that he then showed witness the list of property to be seized, prepared by plaintiff's counsel.

The Sheriff stated to another attorney for the plaintiff, that, with attorneys, he was not disposed to exact an indemnity bond, but would seize whatever property they pointed out, upon the assurance that they would hold him harmless.

This witness further stated that, on the morning of the 22d Oct. he met Col. *Barham,* and asked him what he had done on the execution : he said he had gone up the night before and that morning, but got there too late ; the negroes had been removed.

The witness also says that, upon consultation with the other attorney on the morning of the 22d, they could not ascertain that there was any other property to be seized except the slaves *Peter* and *Gus,* which were seized accordingly.

DAVIS
*v.*
BARHAM.

. The Sheriff's return upon the *fi. fa.* in *Davis* v. *Hall,* signed by *Thos. N. Barham,* officially, is as follows : " Rec'd the within October 21st 1851, and on the 22d day of the same month, I seized upon one negro man, *Peter,* of dark complexion, aged about 30 years, said negro having been previously seized under a *fi. fa. William S. Yancy* v. *Dixon Hall, Sr.,* and the said negro advertised to be sold on the first Saturday in December, 1851; at the same time gave notice of seizure and took bond from the defendant for the delivery of said negro, with *Dixon Hall, Jr.* and *E. B. Barnes,* as security; on the 30th day of same month seized upon one negro boy named *Gus* or *Augustus,* aged about 14 years, advertised to be sold the first Saturday in January, 1852, and before sale, as above mentioned, the same was enjoined."

It is in evidence that *Dixon Hall,* the defendant in execution, had the recorded title to the slaves in question, in his own name, at the date the execution was issued. He had conveyed them to his brother, *A. G. Hall,* in Mississippi, in March, 1848, and brought them back in Morehouse parish, in March, 1849, both deeds being of record in the proper office. The fact that he had them removed, shows that he also had possession. It is otherwise proved that he had the control and management of the property.

The only pretended adverse title was that of his wife and children, which had been adjudged a simulation in a suit to which *Barham* was a party, and of the result of which he was advised.

. Under these facts we are of opinion that the Sheriff cannot rightfully avail himself of the defence that Mrs. *Hall* was the real owner of the slaves removed by his advice. The action is an action in damages for a malfeasance as well as for a non-feasance, for acts of commission as well as of omission. If the Sheriff had merely refused to seize on the ground that the property did not belong to the judgment debtor, the case would present a different aspect.

But he did not so refuse; on the contrary, he misled and deceived the plaintiff's counsel into a belief that he would seize; he did not ask for an indemnity bond; he admitted, even to the defendant in execution, that he was " bound to make a seizure ;" and to avoid doing what he acknowledged to be a duty, he forgot his station, betrayed the trust confided to him by the law, counselled the clandestine removal of the property beyond his bailiwick for the purpose of obliging a friend, and furnishing himself an apparent excuse for official neglect and confederated with the judgment debtor to aid him in the removal, by notifying him of the hour to which he would postpone the levy in furtherance of their common design.

The defence that the property was not liable to seizure is thus rebutted by the Sheriff's own conduct and admissions.

The only evidence in support of this defence worthy of a moment's consideration, is that of the other party to the alleged conspiracy, the judgment debtor himself, who had the candor to testify : " I don't know when the execution in *Davis* v. *Hall* issued, but we found out that we were a little lame and started before the battle." It seems that one of the grounds of the decision in *Elizabeth Hall* v. *Hill, McLean & Co.,* 6 An., was that the plaintiff failed to prove the reality of the sale from her husband to his father in 1839, although the case was closely contested and every attempt was made to procure this proof.

As a *dernier ressort,* the husband himself, who could not be a witness for his wife or children, was brought forward in this suit as a witness for the Sheriff, to supply the utter deficiency of other testimony than that emanating from his own lips.

Now, even if he were a competent witness for this purpose in this cause, it is evident the Sheriff's misconduct in colluding with him to remove the property beyond the reach of process, has caused the plaintiff to lose an opportunity of making his debt, and damaged him to that extent; for, had he made the seizure as he undertook to do, and could have done, the sale could only have been stayed by another injunction, sued out by Mrs. *Hall*, on the trial of which her husband could not be a witness, and which must, therefore, have shared the fate of the injunction against *Hill, McLean & Co.*

After the preceding remarks, it is not, perhaps, essential to pass absolutely upon the question of the competency of *Dixon Hall* as a witness in this cause, but our impression is that he should have been rejected, and that the bill of exceptions to his admission was well taken.

Upon his *voir dire* he testified as follows : " I believe I have an interest in this case. I feel just this way : I never did owe *Davis* the debt, and he never can collect it of me. If Col. *Barham* has it to pay, I shall feel in honor bound to help him. I should only feel legally bound to pay Col. *Barham* the debt and interest in case of *Davis* v. *Myself.*"

The case of *Brumgard* v. *Anderson*, 16 L. R. 343, where the witness was held incompetent, seems to be an authority in point.

The Code (Art. 2260, O. C.) declares that the witness must not be interested either directly, *nor indirectly*, in the cause. It is a curious matter in legal history, that the terms "nor indirectly" appear to have been overlooked and practically repealed by a course of precedents probably too numerous to be now disturbed. The adjudicated cases, adopt the English rule that the witness must be *directly* interested in the event of the suit, and be called to support that interest, or he is not disqualified. It matters not how trivial the interest may be, if it be direct, pecuniary and dependant upon the result of the suit. This seems to be the upshot of the cases.

In the matter before us, the witness swears that he believed himself interested. He gives a portion, at least, of the grounds of his belief. He acknowledges both a moral and legal obligation to pay *Barham*, the *Davis* debt and interest, in case this suit should result in fixing liability upon *Barham*. But he emphatically denies that he ever did owe *Davis*, or that *Davis* can ever make him pay.

The testimony shows that the witness has the control of means which he thinks he can screen from his creditors at his will, which he intends always to screen from *Davis*, but will unlock to indemnify his friend, the defendant in this case, if he is condemned by our judgment.

Admitting these facts to be true, we do not think the witness' opinion touching his interest in the event of the suit was erroneous. If it was not, he should have been rejected.

Leaving his testimony out of view, there is no foundation for the verdict of the jury, which then loses all its weight.

The fact that the slaves seized in the suit of *Hill, McLean & Co.*, have been brought back from Arkansas, since the pretended sale there, shows that their proprietor did not intend that *Barham*, who was a surety on the injunction bond in that case, should suffer.

Whether he will be permitted to suffer by those whom he has befriended in the matter out of which this suit grows, depends upon the sincerity of their professions.

DAVIS
*v.*
BARHAM.

Our duty is plain. Disposed as we are to protect ministerial officers, in the honest discharge of their functions, against captious and unjust suits, we are also bound to hold them to a rigid measure of responsibility, when they wilfully obstruct the course of justice. The sharp lessons which Courts are too often compelled to teach, concerning fraud and simulation, will be read to little purpose, if they shelter their own officers from liability for lending their potent aid to the devices of debtors, who having the means, are determined not to pay their debts.

It does not appear that any thing came into the hands of the plaintiff from the seizure of the slaves *Peter* and *Gus*; if any thing should hereafter be made, it will enure to the benefit of those who may pay the judgment in *Davis* v. *Hall.* It is, therefore, ordered, that the judgment of the District Court be reversed, and the verdict of the jury set aside; it is further ordered, adjudged and decreed, that the plaintiff, *Benjamin Davis*, recover of the defendant, *Thomas N. Barham*, Sheriff of the Parish of Morehouse, the sum of three thousand two hundred and thirty-six and 28-100 dollars, with interest thereon, at the rate of eight per cent. per annum, from the 1st day of October 1843 till paid, and the costs of this suit in both Courts. It is further adjudged and decreed, that the said plaintiff recover of the sureties on the official bond of the said *Barham*, Sheriff, the following sums, to-wit : of the succession of *William A. Williams*, herein represented by *Mary R. Carrick*, administratrix, the sum of three thousand dollars ; of *A. J. Bobo*, the sum of four hundred dollars ; of *Oliver Wilder*, the sum of four hundred dollars ; of *B. B. Billingsly*, the sum of five hundred dollars ; of *John W. Head*, the sum of two hundred dollars ; and of the succession of *A. J. Lee*, herein represented by Mrs. *Lee*, his widow and administratrix, the sum of five hundred dollars—the said sureties, or either of them, upon payment of any part of the judgment herein rendered against them to be subrogated *pro tanto* to the rights of the plaintiff herein against their principal, the said *Thomas N. Barham* ; and it is further ordered that this judgment be credited with any moneys which shall have been made by the plaintiff prior to its payment by defendants, out of the seizure of the slaves *Gus* and *Peter*, in the suit of *Davis* v. *Hall*, but this clause to be without prejudice to the right of the plaintiff to an immediate execution of the present judgment.